IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WARREN T. FLETCHER, #161063 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. WMN-11-1226 |
| STATE OF MARYLAND, et al. | * | |
| GOVERNOR MARTIN O'MALLEY | | |
| GARY MAYNARD | * | |
| J. MICHAEL STOUFFER | | |
| BOBBY P. SHEARIN | * | |
| KENDAL GIFFORD | | |
| CASEY CAMPBELL | * | |
| RICHARD RODERICK | | |
| BETH CASSIDY | * | |
| SEAN SHOCKEY | | |
| C. ZIES | * | |
| LESLIE SMITH | | |
| J. WHITE | * | |
| SUSAN JOHNSON | | |
| LT. WARNER | * | |
| JOE LOIBEL | | |
| MARY HUEBNER | * | |
| SGT. SEAR | | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM**

Pending before the Court is Defendants' unopposed Motion to Dismiss or for Summary Judgment.[1] ECF No. 22. The case is ripe for dispositive review.[2] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] Plaintiff was issued required notice of Defendants' filing. ECF No. 23. Although he was thrice granted an extension of time, he has not filed an opposition.

[2] Defendants Loibel and Huebner are no longer employed at NBCI and service was not effected on them. Service of process was effected on all other Defendants.

## Background

Plaintiff is a Division of Correction ("DOC") inmate, housed at the North Branch Correctional Institution ("NBCI"), who alleges repeated violations of his right of access to the courts by DOC personnel. He claims that: he was transferred out of state in March of 2010, in retaliation for his litigation; his legal documents were confiscated and taken or lost; and documents sent to case management for photocopying were not returned. He further complains that in 2009, he was informed that any requests for copy work were to be forwarded to the NBCI library for photocopying. He asserts that he forwarded his petition for post-conviction relief to the librarian on April 20, 2009, sought its return two weeks later after complaining about the policy, and claims that his petition was lost. Plaintiff claims that mail sent to the state court and to the Office of the Attorney General in August of 2009 was stopped and the following month his mail, consisting of a document referencing an independent "criminal investigation," was stolen.

Plaintiff also complains that on June 14, 2010, his cell was searched, at times outside his presence, and the officer made copies of some of his documents and destroyed others. Finally, he alleges that on July 29, 2010 and March 17, 2011, documents were stolen and never returned. He does not identify the documents.

In response to the Complaint, Defendants assert that Plaintiff was transferred to NBCI on January 27, 2009, and was placed on segregation. ECF No. 22, Ex. 1. He remained so assigned until his Interstate Corrections Compact ("ICC") transfer to Kansas in March of 2010. He was returned to Maryland and NBCI on May 18, 2010. With regard to the transfer, the record shows that the ICC movement occurred in response to Plaintiff's requests and he was being considered for

the interstate transfer as early as January 9, 2009. *Id*., Ex. 2. Indeed, over the next 30-month period Plaintiff vacillated about the transfer, alternatively requesting and then declining the relocation.

The record further shows the Plaintiff has made repeated requests for copy work and has been provided a copious amount of photocopies. ECF No. 22, Ex. 2. Further, over the course of approximately two years, from 2009 to 2011, Plaintiff filed over 100 administrative remedies, complaining that he had been refused copy work by NBCI staff and certain NBCI personnel were making it their own policy to require that inmate photocopying occur in the prison library. Plaintiff additionally complained that his outgoing mail was being tampered with as mailroom staff were refusing to send it out certified. *Id*., Ex. 3.

Defendants affirm that at the time of his April 2009 photocopy request, Plaintiff did not qualify for indigency status and was informed that he could forward his documents to the library, where it would be copied for a nominal per page fee. At that time the library handled all non-indigent inmate photocopying requests. *Id*., Ex. 4. On April 22, 2009, the policy was changed for segregation inmates such as Plaintiff. Segregation inmates were to direct their copy work inquiries to their case managers. In this case, Plaintiff's case manager, Charlotte Zies, requested that Plaintiff exit his cell and bring Zies the documents he wished to have copied. Plaintiff does not refute Defendants' contention that he refused to exit his cell to provide Zies the copies. *Id*., Exs. 2 & 4. Defendants affirm under oath that they at no point stole mail or copy work from Plaintiff.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the

3

motion.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to

4

> attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

Plaintiff alleges that over the course of two years he has been subject to legal document confiscation and staff refusal to copy his documents. His allegations are unsupported by the uncontroverted record. Further, he has shown no harm from that alleged deprivation under both the First and Fourteenth Amendments. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) ("The right of access to the courts… is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.").

A prisoner wishing to demonstrate a Fourteenth Amendment burden on his right of access to the courts "must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U. S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. There has been no allegation that a deadline was missed, or that Plaintiff was unable to pursue a meritorious claim.

Next, Plaintiff alleges that he was subject to a retaliatory ICC transfer to Kansas. The unopposed record does not support his conclusory claim. The materials show that Plaintiff requested the transfer and was under consideration prior to his NBCI assignment. In any event, Plaintiff has

5

no constitutional right to be confined at a particular correctional facility.  Generally, prisoners do not have a constitutional right to demand to be housed in one prison verses another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

## Conclusion

As Plaintiff's constitutional rights were not abridged, Defendants are entitled to summary judgment.  A separate Order follows.

/s/

Date:  5/24/12

_____
William M.  Nickerson
Senior United States District Judge